WO

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) LITIGATION | **MDL 09-02119-PHX-JAT**<br>**CV 10-630-PHX-JAT** |
| THIS DOCUMENT RELATES TO: | **ORDER** |
| Robinson v. GE Money Bank et al.,<br>CV 10-00630-PHX-JAT[1] | |

## I.    Jurisdiction

Following the Supreme Court's decision in *Americold Realty Trust v. Conagra Foods, Inc,* 136 S.Ct. 1021 (2016) (holding that a trust takes on the citizenship of its members), this Court called for supplemental briefing on jurisdiction. (Doc. 2046). Both Trustees (U.S. Bank as Trustee for Structured Asset Securities Corporation Series 2006-GEL3 and Bank of New York Mellon As Trustee for SAMI II 2006-AR3) and Plaintiffs

---

[1]  In the original case (CV 09-227-TUC) that was bifurcated and partially transferred to the MDL (counts related to the operation and formation of MERS were transferred to the MDL court), the amended complaint listed 4 Plaintiffs: Sally Robinson-Burke and Jonathan Burke ("the Robinsons") (re property at 7095 North Tula Lane, Tucson, Arizona); Rosa Silvas ("Silvas") (re property located at 3167 N. Corona Place, Nogales Arizona) and Amada Holbert (re property located at 10636 South Varner Drive, Vail, Arizona). (Doc. 91 in CV 09-227-TUC). Ms. Holbert was voluntarily dismissed from CV 09-227-TUC on May 7, 2010 because she entered into a loan modification agreement. The Court has not located a comparable dismissal in the MDL case number (MD 09-2119) nor the member case (CV 10-630-PHX); however, because no party has treated Ms. Holbert as a Plaintiff in either case before this Court, the Court presumes the dismissal in CV 09-227-TUC applied equally in this case. The Tucson case is now closed. (CV 09-227 Doc. 282).

appear to take the position that the Trustees were not sued to "reach" the assets of the trusts (unlike *Navarro Savings Assn. v. Lee,* 446 U.S. 458 (1980)), but instead argue the Trustees are literally the Defendants, and that the status as Trustee is irrelevant.  (For example, Plaintiffs state "Plaintiffs did not sue any trusts." (Doc. 2048 at 1)).  In other words, both briefs imply that any judgment Plaintiffs might obtain against U.S. Bank, as Trustee, or Bank of New York Mellon, as Trustee, would be paid by U.S. Bank or Bank of New York Mellon personally, and not out of the res of the respective trusts.  Further, they both imply that the banks are paying their own legal fees; not that the either Trust is paying the legal fees of its Trustee.  If these representations are true, the Court would agree that U.S. Bank's citizenship and Bank of New York Mellon's citizenship is the relevant citizenship for diversity purposes and not the citizenship of the Trust (i.e. all the members/certificate holders of the Trust).

However, Plaintiffs have made no claims of breach of fiduciary duty against U.S. Bank or Bank of New York Mellon, which is the typical claim made against a Trustee personally.  Instead, Plaintiffs must be alleging that they can make direct claims against U.S. Bank or Bank of New York Mellon as the de facto "manager" of Plaintiffs' loans as a Trust asset.  Assuming this is true, the Court is unclear why U.S. Bank was named "solely in its capacity as Trustee", because in reality, it is being named solely in its capacity as a Bank.  The same would be true for Bank of New York Mellon.

Because the Court cannot do any fact investigation on its own, the Court is left to accept the parties' representations.  Based on these representations, the Court will accept that the Trusts, and their respective assets, are not at issue in this case.  The Court will also accept these representations to establish that the Banks, and not the Trusts or their assets, are the real parties in interest.

## II.    Summary Judgment Standard

Summary judgment is appropriate when a moving part shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56.  Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-movant to establish the existence of material fact.  *Id.*  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. Pro. 56(e) (1963) (amended 2010)).  A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment.  *Id.* at 247–48.

## III.    Count I of the Amended Complaint

Following the Court of Appeals reversal (*In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d 772 (9th Cir. 2014) at Doc. 1820) of this Court's dismissal of the consolidated amended complaint in this case, there is one Count remaining.  The remaining Count is a cause of action under A.R.S. § 33-420(A).  Another Court in this district has summarized this cause of action as follows:

> …A.R.S. § 33-420(A) [] penalizes persons claiming an interest or lien in real property for knowingly recording a document that is "forged, groundless, contains a material misstatement or false claim or is otherwise invalid":

A. A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that *the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid* is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

(Emphasis added.) The broader statutory section, A.R.S. § 33-420, is entitled "False documents; liability; special action; damages; violation; classification."

*David A. Kester v. CitiMortgage,* CV 15-365, Doc. 37 (D. Ariz. March 31, 2016).

## IV.   Robinsons' and Silva's Fact Specific Claims

### A.   The Plaintiffs

The member case at issue in this Order (CV 10-630) involves two properties previously owned by the Robinsons and Ms. Silvas (*see* footnote 1).  Beyond having both been named as Plaintiffs in this suit, it does not appear that the Robinsons and Ms. Silvas have any relation to each other, nor do their respective properties.  Thus, even this member case is in actuality two completely separate cases.

### B.   The Defendants

In their first supplement regarding jurisdiction (Doc. 2001-1), Plaintiffs stated that there are six defendants in the Robinson/Silvas member case: 1) U.S. Bank, National Association, as Trustee for Structured Asset Securities Corporation Series 2006-GEL3; 2) Wells Fargo Bank, N.A.; 3) The Bank of New York Mellon, as Trustee for SAMI II 2006-AR3; 4) ReconTrust Company, N.A.; 5) MERSCORP Holdings, Inc.; and 6) Mortgage Electronic Registration Systems, Inc.

MERSCORP Holdings, Inc. and Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS") moved for summary judgment at Doc. 1979; Plaintiffs responded

at Doc. 2011; and MERS replied at Doc. 2040.  This Motion seeks summary judgment against both the Robinsons and Silvas.

Wells Fargo Bank, N.A. and U.S. Bank, National Association, as Trustee for Structured Asset Securities Corporation Series 2006-GEL3 moved for summary judgment at Doc. 1923, Plaintiffs responded at Doc. 2009 and these Defendants replied at Doc. 2037.  This Motion seeks summary judgment against the Robinsons.

Bank of America, The Bank of New York Mellon, as Trustee for SAMI II 2006-AR3, and ReconTrust Company, N.A. moved for summary judgment at Doc. 1921, Plaintiff responded at Doc. 2021, and Defendants replied at Doc. 2035.  This Motion seeks summary judgment against Silvas.  With regard to this motion, based on Plaintiffs' jurisdictional statement (which does not list Bank of America), the Court is unclear whether Bank of America is actually a Defendant to the Silvas' complaint.  However, Plaintiff's response to this motion for summary judgment includes Bank of America as if it is a proper Defendant.

In the Consolidated Amended Complaint (Doc. 1424 at 17) Plaintiffs also made a claim on behalf of the Robinsons against America's Servicing Company.  However, Plaintiffs' statement of jurisdiction (Doc. 2001-1) does not mention America's Serving Company as a Defendant in this case.  America's Serving Company currently has no motion for summary judgment pending.  Nonetheless, the Robinson Plaintiffs repeat their allegation against America's Serving Company in their response (Doc. 2009 at 4) to Wells Fargo's and U.S Bank as Trustee's motion for summary judgment.  Further, at footnote 5 of Doc. 2009, Plaintiffs state without citation that America's Servicing Company is a dba of Wells Fargo.  Thus, perhaps this is not a separate Defendant even though the consolidated amended complaint makes specific allegations against it.

## C.   Scope of the Mandate (Forgery)

As to Plaintiffs' claims, this Court previously recounted,

> [Plaintiffs'] amended complaint was dismissed on October 3, 2011. (Doc. 1602). Plaintiffs appealed dismissal of Counts I-VI to the Ninth Circuit Court of Appeals. The Court of Appeals reversed the dismissal of Count I and affirmed the dismissal of Counts II-VI. *In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d 772, 786 (9th Cir. 2014). Specifically, the Court of Appeals held that: (1) A.R.S. § 33-420 applies to Notices of Trustee Sale, Notices of Substitution of Trustee, and Assignments of a Deed of Trust, documents which Plaintiffs alleged to be fraudulent in the CAC; (2) Plaintiffs' claims are not timebarred; (3) Plaintiffs have standing to sue under A.R.S. § 33-420; and (4) Plaintiffs pleaded their robosigning claims with sufficient particularity to satisfy Federal Rule of Civil Procedure 8(a). *In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d at 781-784.

Doc. 2005 at 2.

More specifically, the Court of Appeals held that Plaintiffs had stated a claim that "the documents at issue are invalid because they are 'robosigned (forged).'" *In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d at 783.[2]   As this Court discussed at length in the order denying class certification (Doc. 2005), this claim is the only claim of the 18-page Count One that was remanded to this Court.  Indeed, the Court of Appeals confirmed that all other theories potentially embedded in Count One were waived by Plaintiffs because Plaintiffs did not raise them on direct appeal.  (Doc. 2047)  Thus, Plaintiffs must survive summary judgment on this single claim.

As indicated above, the statute at issue creates a cause of action when someone files a document that is: 1) forged; 2) groundless; 3) contains a material misstatement or false claim; or 4) is otherwise invalid.  A.R.S. § 33-420(A).  However, the Court of Appeals' mandate could be construed as permitting Plaintiffs to prove only "forgery" as

---

[2]  Unlike some of the other member cases, the Court of Appeals did not recount any factual allegations specific to the Robinsons or Silvas, whose foreclosures are at issue in this member case, in its reversal.  (Doc. 1820).

the means by which this statute was violated.  (Doc. 1820).  Indeed in a subsequent decision, the Court of Appeals stated

> "This court's reversal of Count I was limited to petitioners' claims of robosigning *and* forgery. To the extent petitioners now seek to challenge the MDL Court's dismissal of Count I as to allegations beyond robosigning *and* forgery, that challenge is waived because it was not raised in the appeal in *MERS I*."

(Doc. 2047 at 2) (emphasis added).

Accordingly, the Court will analyze "forgery"[3] specifically because it is possibly the only claim remaining before this Court.  The Court will then attempt to determine whether Plaintiffs are claiming A.R.S. § 33-420 was violated by Defendants in some other way.

### D.    MERS' motion for summary judgment

#### 1.    MERS Motion as to the Robinsons - Forgery

MERS has identified Jennifer Hamlin as the person who signed the Robinsons' assignment on behalf of MERS.  With respect to the allegations that Ms. Hamlin's signature was "forged", Plaintiffs have failed to create a disputed issue of fact. Specifically, each of the Robinsons' testified that they had no evidence that Ms. Hamlin's signature was forged.  (Doc. 1979 at 11).  Ms. Hamlin testified that the signature was in fact hers.  (*Id*.)  Finally, Plaintiffs' own handwriting expert testified that Ms. Hamlin's signature on the document was consistent with other examples of her signature.  (*Id*.; Doc. 1980-1 at 116).[4]  On this record, Plaintiffs have no evidence of forgery and MERS is entitled to summary judgment.

---

[3]  Arizona's Criminal Statutes define forgery (as is relevant here) as follows: "A person commits forgery if, with the intent to defraud, the person: 1) Falsely makes, completes or alters a written instrument…."  A.R.S. § 13-2002.  While A.R.S. § 33-420 is not a criminal statute, it does include a criminal penalty; thus this Court will use this definition.

[4]  The Court has cited MERS' motion and accompanying statement of facts for "facts" recounted in this paragraph because Plaintiffs did not respond to MERS's argument that

### 2.    MERS Motion as to Silvas – Forgery

MERS has identified Christina Balandran as the relevant signer of the Silvas' assignment on behalf of MERS.  (Doc. 1979 at 11).  Ms. Silvas testified that she had no evidence that Ms. Balandran did not actually sign the documents.  (*Id.*)  Plaintiff's expert did not examine Ms. Balandran's signature, and had no opinion on the authenticity of her signature.  (*Id.*).  On this record, Plaintiff has offered no evidence that Ms. Balandran's signature is a forgery.  *See Celotex*, 477 U.S. at 325 (moving party may discharge its burden on summary judgment by showing there is an absence of evidence to support the nonmoving party's case).  Accordingly, MERS is entitled to summary judgment.

### 3.    Plaintiffs' allegations against MERS

The Court having concluded there is no disputed issue of fact on the only issue the Court of Appeals reversed, namely forgery, the Court could enter judgment in favor of MERS.  However, the Court will address "robosigning" because it was specifically mentioned by the Court of Appeals and arguably within the scope of the mandate.

Reading Plaintiffs response to MERS' motion for summary judgment, it would appear Plaintiffs believe "robosigning" is, by and of itself, a way to violate A.R.S. § 33-420.  It is not.  The statute lists four distinct and specific ways it can be violated, and Plaintiffs' "robosigning" allegation must fall within one of these four categories to even state a claim.[5]

Plaintiffs define robosigning as, "the actual process where people either forge signatures on high volumes of foreclosure documents, or the actual person signing lacks

---

the documents are not forged and did not present any facts on this issue.  Accordingly MERS' facts are undisputed.

[5]   The Court notes that the Court of Appeals found Plaintiffs stated a claim as to "robosigning (forgery)".  This Court is aware that it is bound by that decision.  However the Court of Appeals never suggested that robosigning standing alone, with no evidence of forgery or some other means of violating the actual language of the statute, would state a claim.

1   knowledge of the facts being attested to, and/or the documents are pre-notarized

2   (notarized in blank) or post-notarized (the notary didn't actually witness the signature)."

3   Doc. 2011 at 7-8.[6]   Only one of these means of robosigning, namely forgery, overlaps

4   with the ways to violate A.R.S. § 33-420.

5                          **a.     Robinsons' allegations against MERS**

6          Plaintiffs' claims that Ms. Hamlin is a robosigner because she did not have

7   "personal knowledge or do any independent investigation of the facts that were set forth

8   in the assignment."   Doc. 2011 at 8.   Notably, lack of personal knowledge and lack of

9   investigation are not ways to violate A.R.S. § 33-420.   Further, to the extent Plaintiffs

10  seek to imply that such lack of knowledge or lack of investigation might rise to the level

11  of being a material misstatement or false claim, or make the document groundless or

12  otherwise invalid, (each of which are way to violate A.R.S. § 33-420), this Court has

13  previously stated that it has not located any authority in Arizona that requires "an

14  attestation of personal knowledge" on documents making up the nonjudicial foreclosure

15  process.   *Hensley v. Bank of N.Y. Mellon*, 2013 WL 791294, *6 (D. Ariz. Mar. 4, 2013).

16  Like the Plaintiff in *Hensley*, Plaintiffs in this case have failed to direct this Court to any

17  such authority.   Thus, even if Plaintiffs had facts to support this claim, it fails as a matter

18  of Arizona law.

19         Moreover, Plaintiffs have no facts to support this claim.   As stated above,

20  Plaintiffs' assert that Ms. Hamlin did not have personal knowledge of the documents she

21  signed and did not investigate the documents she signed.   Plaintiffs' citation for this fact

22

23  _____

    [6]   MERS takes issue with Plaintiffs' definition of "robosigning" arguing that it has no
    basis in Arizona law.   (Doc. 2040 at 7-8).   This Court has previously bemoaned the
24  problems that arise from the use of the word "robosigning", which does not appear to
    have a uniformly accepted legal definition.   (Doc. 2005 at 8, n.3).   Plaintiffs' citation for
    their proposed definition comes from a case in the District of Columbia.   (Doc. 2011 at
25  8).   MERS appears to be correct that this citation would have no relevance to the law of
    Arizona.

is: 1) paragraph 10 of their statement of facts, which cites Exhibit 11, p 51:9-54:13, and 2) all of Exhibit 31 (which is 21 pages).  Thus, Plaintiffs cite 24 pages of deposition testimony for this Court to review and determine whether it supports Plaintiffs' factual assertion.  The Court would note that "[j]udges are not like pigs, hunting for truffles buried in briefs."  *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)).

Nonetheless, the Court has reviewed the deposition testimony and determined that Plaintiffs mischaracterize it.  Ms. Hamlin testified that she would review the documents (Doc. 2023-7 at 42) and that if there were any questions, she would do further investigation to verify ownership (Doc. 2023-7 at 42-43).  Accordingly, looking to only Plaintiffs' evidence, on this record there is no evidence that Ms. Hamlin did not have personal knowledge of the documents or failed to investigate the documents.  Therefore, even if such a theory could state a claim, on this record, MERS is entitled to summary judgment.

In the response to the MERS' motion for summary judgment, Plaintiffs also allege that Mr. Duong signed a document relevant to the Robinsons' case.  (Doc. 2011 at 8).  Plaintiffs' counsel then states "Hank Duong … is also believed to be a robosigner."  (*Id.* at 8).  MERS argues that Plaintiffs made no allegation in the amended complaint that the document Mr. Duong signed is attributable to MERS; therefore, MERS is entitled to summary judgment regarding Mr. Duong.  Doc. 2040 at 8, n. 4; Doc. 1979 at 2-3 and n. 2.  Although Plaintiffs mention Mr. Duong in their response to MERS' motion for summary judgment (Doc. 2011 at 8), they do not refute MERS' argument that they have no claims against MERS for Mr. Duong's actions.  Accordingly, MERS is entitled to summary judgment on this theory.[7]

---

[7]   Moreover, Plaintiffs' factual assertion regarding Mr. Duong is based on counsel's "belief" that Mr. Duong is a robosigner.  Counsel's belief is inadequate to survive

At pages 6-7 and footnote 3 of their response, Plaintiffs appear to argue that even if the documents were not robosigned or forged, they are nonetheless false simply because MERS signed them.  Doc. 2011 at 6-8.  Plaintiffs' argument in this regard is somewhat difficult to follow, so the Court quotes it as follows:

> Defendants' attempt to characterize Plaintiff's criticism of the assignment as a claim that MERS has no interest in the note is misplaced. The false statement is related to the transfer of the note itself together with an interest in all monies to become due under the note. This is not the same as saying that MERS was transferring an interest in the note itself.

(Doc. 2011 at 6.)  The Court ordered supplemental briefing on this issue.  (Doc. 2056.)

In the supplemental brief, Plaintiffs go on to explain that their argument is that MERS recorded a transfer of the "note" and that this recording was a "false claim" under A.R.S. § 33-420(A).  (Doc. 2059 at 7-8).[8]  In their motions, the various lenders argue that, factually, MERS has an interest in the note and that MERS transferring that interest is not false.  (*See e.g.*, Doc. 1923 at 16).  On the question of whether MERS had a transferrable interest in the note, there is a disputed issue of fact.

---

summary judgment.  Further, the Court reviewed Plaintiffs' citation to the expert opinion. While the expert appears to have some questions regarding signatures of Mr. Duong in other cases, the expert offers no opinion that the actual document in *this case* is not Mr. Duong's authentic signature.  Therefore, no disputed issue of fact exists as to whether Mr. Duong's signature is authentic.

[8]   In responding to Plaintiffs' supplemental brief, all Defendants argue that this new version of this claim, in which Plaintiffs state that they are not making any allegation of forgery, but instead arguing a completely different section of the statute was violated, is beyond the scope of the mandate.  Doc. 2065; Doc. 2064.  As the Court has discussed above, the Court tentatively agrees that the mandate was limited to robosigning by forgery.  However, robosigning, as discussed above, is not a term that was defined by the Court of Appeals in reversing this Court.  Further, when this Court denied Plaintiffs' theory of class certification as beyond the scope of the mandate (Doc. 2005 at 3-4), the Court did so in part because Plaintiffs expressly disclaimed that they were proceeding on any theory of robosigning, including forgery.  Thus, the Court is left at this point with two ambiguities: 1) did the mandate permit Plaintiffs to proceed on a theory of "robosigning" other than forgery; and 2) assuming yes, is a "false claim," as alleged herein, a kind of "robosigning."  As the Court held above, this Court interprets the mandate as limiting Plaintiffs' claim on remand to robosigning by forgery.  However, the Court is considering this other potential definition of robosigning, alternatively, in case this Court has misinterpreted the mandate.

However, even assuming Plaintiffs can prove the facts as they have stated them, this theory still fails to establish a "false claim" under A.R.S. § 33-420 as a matter of law. The Arizona Courts have already held that MERS can transfer a note. *Sitton v. Deutsche Bank Nat. Trust Co.*, 311 P.3d 237, 243 ¶28 (Ariz. Ct. App. 2013) ("MERS was the mortgagee of record and could assign the note and the deed of trust without regard to [the originating lender's] legal status."). The facts of this case (as claimed by Plaintiff), and the facts of *Sitton* are indistinguishable: that the record of assignments was inconsistent with the reality of the assignments. *Id*. at 243 ¶30. Nonetheless, nothing about MERS' representations changed Plaintiffs' options in a way that impacted Plaintiffs' decisions. *See Sitton*, 311 P.3d at 243 ¶32-¶33.[9] Therefore, the "false claims" were not material.[10] Accordingly, even if Plaintiffs could prove their version of the facts at trial, this theory of liability fails as a matter of law.

---

[9]  The Court stated:

> ...these misrepresentations were not material to Sitton because the timing and sequence of the assignments could have had no effect on Sitton's choice of actions.
>
> ¶ 33 Sitton borrowed money and incurred liability under the note. The lender performed fully at the time of closing; Sitton did not perform. Her choices were to repay the money pursuant to the terms of the note, renegotiate the terms of the note, or default and cause foreclosure. Her liability on the note remained the same no matter who was assigned as beneficiary, or when. The misrepresentations in the recorded assignments were therefore immaterial to her as a matter of law.

*Sitton*, 311 P.3d 237, 243-44 (Ariz. Ct. App. 2013).

[10]  Plaintiffs mischaracterize this Court's prior order by stating that the Court held that Plaintiffs "do not need to prove materiality related to the documents." (Doc. 2011 at 9). This Court did not hold this, and indeed could not, as the statute itself expressly requires that if the theory under which a plaintiff is proceeding is a "misstatement or false claim" such misstatement must be "material". A.R.S. § 33-420. Defendants correctly summarize the Court's prior holding at Doc. 1979, n. 7; specifically, that if a plaintiff is proceeding on a theory that a document is "forged", the plaintiff does not have to prove materiality. *See* Doc. 1912 at 4. This Court's conclusion that "material" does not modify "forgery" is bolstered by the fact that forgery has a specific definition under Arizona criminal law that requires a showing of "intent to defraud" which is a higher requirement than "materiality". *See* footnote 3 above.

### b.      Silva's allegations against MERS

Beyond the allegations discussed above, Plaintiff makes no other allegations about the Silvas' property.  Therefore, MERS is entitled to summary judgment against Silvas.

### 4.      Conclusion on MERS' motion for summary judgment

Because the Court has determined that MERS is entitled to summary judgment on all claims advanced by Plaintiffs in this member case, the Court need not reach MERS additional arguments for summary judgment in its favor including: 1) that MERS did not cause the documents to be recorded; and 2) that Plaintiffs do not have standing under Arizona agency law to contest whether MERS' agents (Ms. Hamlin and Ms. Balandran) were acting within the scope of their authority.  (Doc. 1979 at 8, 13).  MERS will be granted summary judgment as to both remaining Plaintiffs in this member case.

### E.      Wells Fargo's and U.S. Bank Trustee[11]'s motion for summary judgment against the Robinson Plaintiffs

In their motion for summary judgment, Wells Fargo and U.S. Bank Trustee (referred to as Defendants for purposes of this section E) argue seven theories for why they are entitled to summary judgment.

### 1.      Forgery

Defendants argue that the Robinson Plaintiffs have no evidence that any of the signatures on the documents in their chain of title were forged.  Defendants identify the signatures of Jennifer Hamlin, Mark Bosco, and China Brown as appearing on the documents related to the Robinsons' foreclosure.  (Doc. 1923 at 11-14).  Defendants argue that Plaintiffs have no evidence that any of these signatures were forged.

Plaintiffs respond and argue that Jennifer Hamlin is a robosigner and Hank Duong is a believed to be robosigner.  (Doc. 2009 at 9-10).  For the reasons stated above, the

---

[11]  As stated above, U.S. Bank is Trustee for Structured Asset Securities Corporation Series 2006-GEL3.

Court finds Plaintiffs have presented no evidence that either Ms. Hamlin or Mr. Duong signatures are forgeries; accordingly, Defendants are entitled to summary judgment as to these signatures.  Because Plaintiffs offered no evidence regarding Mr. Bosco or Ms. Brown, Defendants are also entitled to summary judgment on these signatures.

Finally, Plaintiffs in their response argue there are "numerous other documents" at issue in the Robinsons' case (Plaintiffs do not specify what these documents are, but suggest the Court could read the report of Plaintiffs' expert, which is 47 pages, and determine which "numerous other documents" are at issue in the Robinsons' case).  (Doc. 2009 at 11).  Defendants reply and argue that they have moved for summary judgment on all documents identified in the consolidated amended complaint, and that Plaintiffs' attempt to interject new and additional documents would require leave to amend; which would be untimely.  (Doc. 2037 at 7-8).

The Court agrees with Defendants that Plaintiffs cannot supplement their complaint with new documents that they claim violate A.R.S. § 33-420 via an expert report that includes additional documents not included in the amended complaint. Moreover, even if Plaintiffs could add documents in this manner, Plaintiffs have failed to create a disputed issue of fact as to whether these documents contain a forgery merely by citing the Court to the expert report without making any argument as to how these document(s) allegedly violate the statute.  Accordingly, Defendants are also entitled to summary judgment on these documents.

## 2.    Written notice

Alternatively Defendants argue that the Robinsons' Deed of Trust specifically required the Robinsons to give written notice of their claims to their lender prior to filing suit.  (Doc. 1923 at 3).  Defendants argue that because the Robinsons' failed to comply

with the required written notice provision before filing suit, Defendants are entitled to summary judgment on the Robinsons' claims. (Doc. 1923 at 3-4).

Plaintiffs do not dispute that they did not give written notice prior to filing suit. Instead, Plaintiffs respond and argue that the original Lender on the loan was WMC Mortgage Corporation. (Doc. 2009 at 4). Plaintiffs then make the following argument: "even if Plaintiffs were [] required to give notice of the false documents claim before filing suit (which they weren't), the notice requirement does not apply to Defendants against whom Plaintiffs are asserting the claim, i.e., Wells Fargo, U.S. Bank, America's Servicing Company, and MERS." (Doc. 2009 at 4).

Plaintiffs make no argument in support of their "which they weren't" parenthetical. Thus, the Court has no idea why Plaintiffs believe the notice requirement of their Deed of Trust does not apply to this claim. Accordingly, there being no disputed issue of fact, or argument to the contrary, the Court finds the notice provision is in effect.

Plaintiffs cite nothing in support of their argument that "Lender" as used in paragraph 20 of their Deed of Trust would not apply to any subsequent lender who purchased the loan, and instead would apply to only the original lender. Defendants reply and argue that paragraph 13 of the Deed of Trust provides that all provisions of the Deed of Trust bind and benefit the successors and assignees of the Lender. (Doc. 2037 at 1). Accordingly, the Court concludes that by the Deed of Trust's plain language, the written notice provision is not limited to the original lender.

Because the Robinsons did not give this required notice, Defendants are entitled to summary judgment on any and all theories of a violation of A.R.S. § 33-420.

**3.       U.S. Bank Trustee's argument that it was "not involved" in the foreclosure of the Robinsons' property**

U.S. Bank argues that it owns the note, but delegated all obligations of collecting the collateral to someone else.  (Doc. 1923 at 4-5).  The Court order supplemental briefing on this argument and specifically the following question:

> …whether U.S. Bank is arguing [that] it IS the principal of its agent (MERS and the loan servicer), but that those agents did nothing wrong; **or** if U.S. Bank is factually disavowing any agency relationship; thus, U.S. Bank could potentially escape liability if it personally took no action with respect to the Robinsons' loan.

Doc. 2055 at 3.

U.S. Bank timely responded to the request for supplement briefing and stated as follows:

> MERS was a party to the Robinsons' deed of trust, as nominee for the lenders and its successors and assigns. [citation omitted] The MERS Rules with its members provide that an independent contractor relationship exists except "in the case of MERS acting as nominee with respect to a MERS loan, as Nominee," as is the case here. MERS System Rules of Membership, Rule 10 § 5. [footnote omitted].

Doc. 2057 at 2.

Following this briefing, the Court was still unsure what exactly U.S. Bank, as Trustee, was arguing.  The supplemental brief appeared to argue that, for purposes of this case and the Robinsons' deed of trust, MERS is a "nominee".  MERS' legal status as a "nominee" has resulted in various conclusions regarding its authority to act.  *See* Zachary A. Kisber, *Reevaluating Mers in the Wake of the Foreclosure Crisis*, 42 Real Est. L.J. 183 (2013) (discussing at length the consequences of MERS: 1) calling itself a "nominee"; and 2) never defining "nominee").  In its supplement brief, U.S. Bank, as Trustee, still made no attempt to define the legal status of being a "nominee" and whether

1  that is the same as an agent for purposes of the Robinsons' loan.  (Doc. 2057).[12]  As a

2  result, the Court ordered another supplemental brief.

3      In the second supplemental brief, U.S. Bank and Wells Fargo concede that MERS

4  is their agent.  (Doc. 2063).  Thus, whatever argument U.S. Bank was making (*See* Doc.

5  1923 at 4-5) that it was not involved in the Robinsons' foreclosure fails as a matter of

6  agency law.

7      U.S. Bank devoted the majority of its supplemental briefs to another argument:

8  what mens rea is required under A.R.S. § 33-420, and whether traditional agency laws

9  were suspended by the case of *Wyatt v. Wehmueller*, 166 Ariz. 281, 286 (1991) for

10 purposes of an A.R.S. § 33-420 claim.  Because the Court has already determined that

11 these Defendants are entitled to summary judgment, the Court need not reach this

12 alternative argument.

13      **4.    Conclusion Wells Fargo's and U.S. Bank Trustee's motion for**

14 **summary judgment**

15      Because the Court has determined that these Defendants are entitled to summary

16 judgment on all claims advanced by Plaintiffs in this member case, the Court need not

17 reach their additional arguments for summary judgment in their favor including: 1)  that

18 the filings of record did not show that either of these Defendants claimed to have an

19 "interest" in the property; 2) that someone else physically recorded the documents; 3) that

20 any alleged misstatements in the documents are not material; and 4) that Defendants did

21 not have personal knowledge (as opposed to imputed knowledge) that any statements

22 were false.

23

24

_____

25 [12]  MERS responded to U.S. Banks supplemental brief and stated that they are U.S. Banks' agent under Arizona law.  (Doc. 2061).

**F.    Bank of America N.A's, Bank of New York Mellon's,[13] and ReconTrust's Motion for Summary Judgment against Silvas**

Bank of America N.A's, Bank of New York Mellon's, and ReconTrust (referred to as Defendants in this section F) move for summary judgment against Plaintiff Rosa Silvas arguing 11 reasons why they are entitled to summary judgment.

### 1.    Silvas settled and released her claim

When Plaintiff Silvas settled the bifurcated portion of this case (CV 09-227-TUC) she released all

> …claims made or which could have been made by Plaintiff arising from the origination or servicing of the Loan (in any way) as well as in any way related to the underlying property, Note, Mortgage and/or Deed of Trust, any serving act or omission thereon as well as any claim or issue which was or could have been brought in the Litigation, except for the Amended Complaint's Eighth Claim for Relief and the portions of the Tenth and Eleventh Claims for Relief that were transferred for Mulit-district Litigation.

Doc. 1921 at 4.

The undisputed facts are that this release was signed in October of 2013 (Doc. 1922-1 at 6), and that the consolidated amended complaint (in the Phoenix Multi-district case) was filed in June of 2011 (Doc. 1424).  As is clear from the above quoted language, Count 1 (which had already been filed) was not excepted from the general release.  However, the Counts referenced in the release are referring to the amended complaint in the Tuscon case, not the consolidated amended complaint in the Phoenix Multi-district case (by way of example, at the time the release was signed, Count Ten in the Phoenix case dealt with alleged violations of South Carolina law).

Plaintiff's counsel filed an affidavit that says it was not her "intent" to release Count 1: the A.R.S. § 33-420 claim.  Defendants point out that the language of the release is clear.  The Court agrees with Defendants.  Plaintiff released all claims that

---

[13] As Trustee for SAMI II 2006-AR3.

"could have been brought" except the very specific ones reserved in the release.  The A.R.S. § 33-420 claim could have been brought in the CV 09-227-TUC case that was settled and accordingly, was released by the settlement agreement.  Defendants are entitled to summary judgment for this reason.

**2.      Silvas did not comply with the written notice provisions of her Deed of Trust**

Alternatively, Defendants argue that the Silvas' Deed of Trust specifically required Silvas to give written notice of her claims to her lender prior to filing suit.  (Doc. 1921 at 4-5).  Defendants argue that because Silvas failed to comply with the required written notice provision before filing suit, Defendants are entitled to summary judgment on Silvas' claims.  (*Id.*).

Silvas does not dispute that she did not give written notice prior to filing suit. Instead, Plaintiff responds and argues that the original Lender on the loan was America's Wholesale Lender.  (Doc. 2021 at 4).  Plaintiff then makes the following argument "even if Mrs. Silvas was required to give notice of the false documents claim before filing suit (which she wasn't), the notice requirement does not apply to Defendants against whom Mrs. Silvas is asserting the claim, i.e., Bank of America, Bank of New York Mellon, and Recontrust."  (Doc. 2021 at 4-5).

Plaintiff makes no argument in support of her "which she wasn't" parenthetical. Thus, the Court has no idea why Plaintiff believes the notice requirement of her Deed of Trust does not apply to this claim.  Accordingly, there being no disputed issue of fact, or argument, to the contrary, the Court finds the notice provision is in effect.

Plaintiff cites nothing in support of her argument that "Lender" as used in paragraph 20 of the Deed of Trust would not apply to any subsequent lender who purchased the loan, and instead would apply to only the original lender.  Defendants

reply and argue that paragraph 13 of the Deed of Trust provides that all provisions of the Deed of Trust bind and benefit the successors and assignees of the Lender.  (Doc. 2035 at 4).  Accordingly, the Court concludes that by the Deed of Trust's plain language, the written notice provision is not limited to the original lender.

Because Silvas did not give this required notice, Defendants are entitled to summary judgment on any and all theories of a violation of A.R.S. § 33-420.

### 3.    Forgery

Defendants argue that, looking at the substance of the document, the assignment was valid and accurate; and therefore did not violate A.R.S. § 33-420.  Specifically, Defendants argue that Plaintiff has no evidence of forgery, invalid notarization, lack of knowledge, or lack of authority for Christina Balandran.  Further, Defendants argue that all representations regarding MERS were true and that any statement that MERS was transferring the note is "surplusage and immaterial."  Doc. 1921 at 16.

Plaintiff Silvas responds as follows regarding her "evidence" that Ms. Balandran's signature is a forgery:

> Finally, whether the assignment or other documents were appropriately signed, or signed at all, by Christina Balandran and other parties, involves a question of fact. (See e.g., McDonnell report related to Silvas loan filed as Consolidated Exhibit 26 related to securitization history of loan at pp. 10-14; and see paragraph 33 of Plaintiffs' Separate Statement of Facts filed in support of Plaintiffs' opposition to MERS Defendants' Motion for Summary Judgment, incorporated herein by this reference.)

(Doc. 2021 at 11-12).

The Court has quoted Plaintiff's argument in its entirety.  Exhibit 26, as cited by Plaintiff above (Doc. 2023-6 at 1-75) is a 75 page forensic title examination of Silvas' property.  The Court has no indication of why Plaintiff cites only pages 10-14.  In the Court's review of pages 10-13, the Court found no mention of Ms. Balandran.  At page 14 of the Report (page 15 in the electronic record), there are two mentions of Ms.

1    Balandran.  In both instances, the expert questions the scope of Ms. Balandran's authority

2    to authorize the documents in question.  However, in neither instance does the expert in

3    any way question the authenticity of Ms. Balandran's signature.  Accordingly, Plaintiff

4    has offered no evidence of forgery.

5         At summary judgment, Plaintiff has to actually make an argument and come

6    forward with evidence in support of that argument.  Plaintiff's sole "argument" on this

7    point is the conclusion that whether the documents were appropriately signed is an issue

8    of fact.  This is inadequate to establish an issue of fact based on evidence from which the

9    jury could find in Plaintiff's favor.

10        Plaintiff also suggests at two points in her response that many more documents are

11   at issue beyond the documents she identified in her complaint.  (Doc. 2021 at 8, 12).

12   Further, Plaintiff suggests that the complaint should be amended to conform to the

13   evidence.  (Doc. 2021 at 8).

14        First, this is not evidence that is newly discovered; it is evidence that was filed in

15   the public record between 2006 and 2013.  The deadline to file motions to amend the

16   complaint was January 9, 2015 (CV 10-630, Doc. 26 at 2).  Plaintiff cannot show she

17   exercised diligence in seeking an amendment by trying to add these documents to the

18   complaint at this late date.[14]  Thus, the request to amend to add 9 additional documents is

19   untimely and denied.

20        Second, Plaintiff still has not created a disputed issue of fact as to whether any of

21   these documents contain a forgery.  In her response at page 8 she simply states that the

22   documents exist.  In her response at page 12, Plaintiff says she does not want to waive a

23   claim related to these documents.  However, by failing to argue that any of these

---

24   [14] "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the
     party seeking to interpose an amendment and the prejudice to the opposing party, Rule
25   16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the
     amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

documents contain a forgery, Plaintiff has failed to establish a disputed issue of fact on any claim as to any of these documents.   Thus, even if the Court considered the 9 documents not included in the complaint (and not presented to the Ninth Circuit Court of Appeals), the Defendants would still be entitled to summary judgment as Plaintiff has failed to present any evidence from which a jury could find in her favor.

Accordingly, Defendants motion for summary judgment will be granted as to any allegation of forgery.

### 4.     Plaintiff's other claim against Defendants

Identical to the claim made against the MERS Defendants, Plaintiff argues,

> Defendants' attempt to characterize Plaintiff's criticism of the assignment as a claim that MERS has no interest in the note is misplaced. The false statement is related to the transfer of the note itself together with an interest in all monies to become due under the note. This is not the same as saying that MERS was transferring an interest in the note itself.

(Doc. 2021 at 11 and footnote 11 herein).

For the reasons stated above, the Court finds as to this alternative theory of "robosigning" as a means of violating A.R.S. § 33-420, Plaintiff's theory fails as a matter of law, and Defendant is entitled to summary judgment.

### 5.     Conclusion on Bank of America N.A's, Bank of New York Mellon's, and ReconTrust's Motion for Summary Judgment against Silvas

Because Defendants are entitled to summary judgment for the three reasons stated above, the Court need not reach Defendants other alternative reasons they argue they are entitled to summary judgment, including 1) there were no specific allegations against Bank of America; 2) Bank of New York Mellon was not the actor who foreclosed the property; 3) Silvas makes no claims that ReconTrust violated its duties under Chapter 6.1 which is required to state a claim under A.R.S. § 33-807(E) against a Trustee; 4) of the documents Plaintiff complains of in the amended complaint, five were not recorded, and

therefore cannot form the basis of an improper "recording" claim under A.R.S. § 33-420; 5) neither ReconTrust nor Bank of America claim an "interest" in the property at issue; 6) neither Bank of America nor Bank of New York Mellon physically recorded the documents; 7) the alleged misstatements in the documents are not material; and 8) no Defendant had actual knowledge (as opposed to imputed knowledge) that any statements were false.

**V.     Result**

Based on the foregoing,

**IT IS ORDERED** that MERSCORP Holdings, Inc.'s and Mortgage Electronic Registration Systems, Inc.'s motion for summary judgment against the Robinsons and Silvas (Doc. 1979 & 72) is granted.

**IT IS FURTHER ORDERED** that Wells Fargo's and U.S. Bank's[15] motion for summary judgment against the Robinson Plaintiffs (Doc. 1923 & 55) is granted.

**IT IS FURTHER ORDERED** that Bank of America N.A's, Bank of New York Mellon's,[16] and ReconTrust's motion for summary judgment against Silvas (Doc. 1921 & 53) is granted.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment[17] in favor of these 7 Defendants and against these 3 Plaintiffs, accordingly.  The Clerk of the

[15] As Trustee for Structured Asset Securities Corporation Series 2006-GEL3.

[16] As Trustee for SAMI II 2006-AR3.

[17] This Court has previously been questioned for not using Rule 54(b) language when entering judgment in a case in this multi-district litigation.  *Rollins v. Mortgage Electronic Registration Systems, Inc.*, 737 F.3d 1250 (9th Cir. 2013).  The Court has diligently undertaken to attempt to determine whether such language was necessary at this time.  First, the Court has presumed that all Defendants have moved for summary judgment relying on Plaintiffs' jurisdictional statement.  (Doc. 2001-1).  However, the Court notes that Bank of America has moved for summary judgment despite not being listed as a party in the jurisdictional statement; so the parties' representations regarding jurisdiction are of questionable reliability.  Second, the Court has presumed that Amada Holbert was never made a Plaintiff in this MDL, or that she settled (*see* footnote 1

Court shall close CV 10-630-PHX-JAT as a result of this Order.  The Clerk of the Court shall file a copy of this Order in both the MD case number, and the member case number listed above.

Dated this 25th day of July, 2016.

James A. Teilborg
Senior United States District Judge

herein).  Third, the Court has accepted Plaintiffs' representation that America's Servicing Company is a dba of Wells Fargo.  Fourth, the Court has reviewed the docket of the original member case filed in Tucson (because neither party has given the Court any updates as to the status of that case), and determined that the case is closed.  Based on all of these assumptions, the Court believes this Order completely resolves this member case.  However, if either party disagrees, that party shall move for Rule 54(b) language within 3 days, and list for the Court what claims and parties remain in this case (either before this Court or before another Court).